DONALD JOHNSON *vs.* FRANCIS J. DUFFY.

APRIL 8, 1940.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

CONDON, J. This action of trespass on the case was consolidated for trial and tried in the superior court with two other similar actions brought by the plaintiff to recover for the same injuries against two other defendants, The Neighborhood Druggist, Inc., hereinafter referred to as the corporation, and Irma Di Leone. The trial justice decided the cases against Duffy and the corporation in favor of the plaintiff, and the case against Irma Di Leone in her favor. Duffy excepted to the decision against him and has brought his exception to this court. Only his case is now before us.

These actions arose out of an accident which happened to the plaintiff on premises owned by Irma Di Leone and occupied by the corporation as a drug store. The plaintiff fell down a stairway leading to the cellar of the premises while he was delivering certain merchandise which had been ordered from his employer by the corporation.

The plaintiff alleged in his declaration that Duffy was the tenant and in control of the premises at the time of the

accident, and that it was his duty to keep the stairs in repair so that persons using the premises at his invitation would not be injured while in the exercise of due care. Plaintiff further alleged that Duffy had invited him on the premises on August 3, 1936, and that, while he was there in the exercise of due care, he fell down the stairway leading to the cellar of the premises because of certain defective and broken steps which Duffy had negligently permitted to remain in that condition. Defendant pleaded the general issue to this declaration.

The evidence showed that the corporation was the actual occupant of the premises and that it had been such occupant for many years prior to the date of the accident. The evidence also showed that plaintiff was on the premises on that date delivering merchandise which the corporation had ordered. It also appeared from the evidence that the corporation's retail drug business was conducted on the premises by its manager, Joseph B. McCarthy, who had been so employed by the corporation from August 1 or 2, 1932, after it bought the assets of the Ferncrest Pharmacy, Inc., which had formerly conducted a drugstore on these premises and which had made a common-law assignment for the benefit of its creditors. For several years prior to August 1932, McCarthy had managed this drugstore for the Ferncrest Pharmacy, Inc., and had personally paid the rent therefor to the owner of the premises.

The evidence further disclosed that on July 15, 1932, before the sale of the assets of Ferncrest Pharmacy, Inc., by its common-law assignee, to Neighborhood Druggist, Inc., John Di Leone, who acted as general agent for his wife, Irma Di Leone, the owner of these premises, gave Duffy an option of lease thereof for one year, with a privilege of renewal for a term of four years. Di Leone testified at one point that a lease for five years was executed to Duffy; he testified at another time that the lease was executed to

The Neighborhood Druggist, Inc.; and still later, he testified he did not know to whom the lease was made.

Duffy testified that he could not remember whether there was a lease, but if there was, it would be in the name of the corporation. No lease and no copy of such a lease was produced at the trial. There was some other testimony by McCarthy as to a lease, but it was not clear at first whether he was referring to a lease or the option for a lease, although later it appeared that it was the latter. He testified positively, however, that he had always paid the rent of the premises, on behalf of the corporation, directly to John Di Leone. And he testified further that Duffy had never given him any money for such purpose but that the corporation's funds at the store were the source from which he made such payments. The evidence also disclosed that Duffy, personally, did not have any actual control or supervision of the business of the corporation conducted on these premises. Duffy's participation in the conduct of the corporation's affairs, according to his testimony, was, "More as a consultant than anything else."

On this evidence the trial justice found that there was a lease to Duffy for a term of five years, from 1932 until 1937, and that Duffy controlled, or participated in the control of, these premises at the time the plaintiff was injured. In reaching this conclusion he stated: "Now you might say: true, there was a lease there, but there is no proof that he was in the control and management of the premises under the lease. I am inclined to think that that statement cannot properly be made. I think Duffy is in this thing more than appears on the surface. I think he had all through these years the control and management, perhaps not to the same extent and in the same way as the corporation had, but I do not think it can be—I can not get myself to believe that Duffy was in this thing altogether and only as we heard it."

Later in his opinion, finding the corporation also liable, he said: "Now as far as the corporation is concerned it seems to me that is a very clear and simple proposition; the corporation is absolutely in control; there can be no question about that. . . . I do not think there can be any question made about the corporation being not only the owner of all this personal property there, but in the control and management of these premises."

Duffy contends that there is no evidence in the record that he, personally, either controlled and managed the premises or invited the plaintiff thereon. He argues further that both he and the corporation cannot be held liable, on any theory that he and the corporation had a joint control and management, or a several control and management of these premises, because the declaration is merely against Duffy individually as the tenant in control of the premises. Recognizing the difficulty of determining that defendant Duffy had personal control of the premises, in the face of the evidence which, as he found, established the absolute control thereof by the corporation, the trial justice apparently tried to resolve this difficulty by holding that both had control, but without finding whether that control was joint or several.

During the colloquy with plaintiff's counsel, concerning several troublesome aspects of this problem which arose on defendant's motion for nonsuit, he observed: "It is pretty clear that both these parties, both Duffy and Neighborhood Druggist can not be lessees at the same time." Plaintiff's counsel replied: "They are all joined as defendants. Duffy says that Neighborhood Druggist is a tenant and lessee; Mr. Di Leone says that Duffy was in there under a lease from 1932 to 1937." A moment before, counsel had also urged that: "The Neighborhood Druggist is in there, too, because Mr. Duffy and Mr. McCarthy are operating this thing for their own benefit, and when the time is right to use the

corporate entity, all right, if not, use the individual entity; and that is why *they are all joined defendants here.*" (italics ours) It is obvious from such argument that plaintiff's counsel was either confused or misunderstood the legal effect of consolidation of cases for trial under our practice; and it may well be that the trial justice likewise became confused.

Consolidating cases for trial does not operate as a merger. "The causes of action remain distinct throughout such a trial and every legal right is preserved to the respective parties as fully as if the cases had been tried separately." *Giguere* v. *Yellow Cab Co.,* 59 R. I. 248. It would appear from the above-quoted colloquy that plaintiff mistakenly considered that the consolidation of these cases for trial effected a joinder of the parties defendant.

It is not certain whether the trial justice was misled by plaintiff's argument, but it is certain that he entertained the notion of a joint or a joint and several liability of the defendants Duffy and The Neighborhood Druggist, Inc., and that he acted upon such notion in making his decision, notwithstanding that each action was as distinct as if it were tried separately. In holding both of these defendants in control of the premises at the same time, he admitted: "Now that may look like an inconsistency, having both Duffy and the corporation in control and management of this property. I think it is possible, although as I say there is an apparent inconsistency there, it may be possible to have a joint control and management or a several control and management of the same premises, and I think that is what happened here, either one or the other, either a joint or a several, but something to which both parties, both Mr. Duffy and the corporation agreed."

It is plain from the foregoing quotation that the trial justice did not decide this case on the evidence introduced to prove the allegations of the plaintiff's declaration that Duffy was in control of these premises, and that he had

invited the plaintiff thereon. Reading his decision as a whole, we are of the opinion that he merely felt that Duffy should be deemed to have shared such control with the corporation, although there was no evidence on which he could rely to warrant such a conclusion. His decision is, therefore, not entitled to the benefit of the rule that it should not be disturbed unless clearly wrong.

We have accordingly read the transcript and weighed the evidence independently of his decision, and we have reached the conclusion that it is erroneous. We find nothing in the evidence to show that the premises in question were leased to Duffy personally. The testimony of John Di Leone that they were so leased is completely canceled by his equally positive testimony that he did not know to whom the lease was made. The following quotation from his testimony makes this point self-evident: "Q. Did you, on behalf of your wife, enter into a lease with a tenant, the Neighborhood Druggist, Inc., concerning that premises? A. I want you to repeat that. Question 16 read by stenographer. A. Yes. ... Q. It was made to Mr. Duffy? A. Yes. Q. The lease was made out to him personally? A. That I don't remember. I know the lease was made." Later the witness testified further as follows: "Q. (by the Court) Your story is that the lease was made out in the name of Frank Duffy? A. Yes." But still later he testified: "Q. You don't know who was named in the lease? A. No."

From testimony of this nature, it cannot reasonably be determined who was the lessee of these premises. This is not an instance of a witness testifying in one way and later testifying in a different way in correction of his previous testimony. Rather, it is a clear case of self-contradiction, which springs from a lack of definite knowledge of the facts concerning which the witness is being interrogated. This testimony may furnish a basis for a finding that there was a lease of the premises, but not for a finding that it was a lease to Duffy.

. We find no other evidence in the record that would tend reasonably to raise the inference that this lease, if one was ever executed, was made to Duffy personally. The option for a lease standing alone, uncorroborated by an actual lease or by conduct of the parties, certainly does not do this. Indeed, the evidence tends to raise the inference rather that the lease was to The Neighborhood Druggist, Inc. McCarthy's testimony that he always paid the rent personally and directly to Di Leone out of the corporation's funds; Di Leone's testimony that he had never received any rent from Duffy but that he had always received it from McCarthy; the testimony of the lawyer, who acted as common-law assignee of Ferncrest Pharmacy, Inc. and sold the assets to The Neighborhood Druggist, Inc. that he acted as attorney in the organization of the latter corporation, and that he had advised obtaining an option for a lease from Di Leone; but that he did not think a lease was drawn in accordance with the option,—all reasonably tend to the inference that there was no lease to Duffy. Without a finding that there was such a lease, there would be no reason for concluding that Duffy had anything to do personally with the control of the premises on the day the plaintiff was injured. Recognizing this to be so, the trial justice found that Duffy held a lease and that, therefore, in some way not disclosed by the evidence, he must have shared the control of the premises with the corporation.

But even if we grant that Duffy was the lessee, the evidence fails to support the allegations in the declaration that he had control of the leased premises and that he had invited the plaintiff thereon. Indeed, the evidence is just to the contrary. The mere proof that he held offices in the corporation, and directed its corporate affairs, does not prove personal liability for the acts of the corporation. Plainly the corporation occupied the premises continuously from its acquisition of the assets of the Ferncrest Pharmacy, Inc. in August 1932; that thereafter it exercised complete control,

or, as the trial justice characterized it, absolute control, thereof through its manager McCarthy; and that McCarthy paid the rent at all times out of the corporation's funds, not to Duffy but to Di Leone. Furthermore there is no evidence that Duffy had anything to do with the management or repair of the property or that he supervised the delivery of merchandise to the store. Unless he participated individually in the act or omission which was alleged to have caused the plaintiff's injury, he cannot be held personally liable with the corporation for its negligence.

As we are of the opinion from our reading of the transcript that there is no such evidence, and no evidence to support the decision of the trial justice, on the ground that Duffy was in control of these premises, it is not necessary for us to pass upon the questions of law discussed in the briefs and arguments of counsel. The exception of the defendant to the decision of the trial justice is therefore sustained.

The plaintiff may, if he shall see fit, appear on April 22, 1940, and show cause, if any he has, why the decision of the trial justice should not be reversed and judgment ordered entered for the defendant.

*Arthur L. Conaty,* for plaintiff.

*William J. Carlos,* for defendant.

